Justin G. Randolph, Esq.
53 W. Jackson Blvd., Suite 1234
Chicago, IL 60604
(312) 663-1560
(312) 277-7432
justin@randolph-holloway.com
*Pro Hac Vice*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Justin G. Randolph, individually, and The Law Office of Justin G. Randolph, An Illinois Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>Pravati SPV II, LLC;<br>Pravati Capital, LLC;<br>Arbitrage Capital Ventures, LLC;<br>Binkley Properties, LLC;<br>Alexander CHUCRI;<br>Robert BINKLEY; Hoyt NEAL;<br>Ian ABAIE,<br><br>Defendants. | Case No.<br><br>**Complaint and Jury Demand** |

Plaintiff, Justin G. Randolph, for their complaint against defendants allege as follows:

## INTRODUCTION

1. This is a racketeering or "RICO" case, pursuant to 18 U.S.C. §§ 1961-68 and A.R.S. § 13-2314.04.

2. The Arizona RICO statute, A.R.S. § 13-2314.04, authorizes a private claim for civil racketeering. Plaintiffs' complaint is grounded on multiple violations of Arizona law. This is also a federal RICO case brought pursuant to 18 U.S.C. §§ 1961-68. Plaintiffs' Complaint is also grounded on multiple violations of the federal mail and wire fraud statutes embodied in the federal RICO statute prohibiting collection of an unlawful debt and "schemes to defraud" where the fraud is "representational" or where the fraud amounts to "cheating and defrauding" without representations. This Complaint alleges violations of the federal mail fraud and wire fraud statutes in both ways.

3. Over the course of several years, defendants Alexander Chucri and his co-defendants and co-conspirators have sought to defraud and otherwise tortiously injure plaintiffs, and others, by means of a plan they conceived and substantially executed in the United States. It has been carried out by a U.S.-based enterprise comprised of, among others, defendant Churci, defendant Neal, defendant Abaie, through Chucri's various alter-egos, 18 separate companies identified collectively herein as "Pravati."

4. The enterprise's putative aim is to provide legal funding to law firms. The enterprise's actual aim is to gain access to property and assets of borrowers through fraud and usury. In furtherance of that goal, defendants have engaged in a serious of corrupt acts. For example, though defendants fund loans based on the portfolio of cases presented to them at the time of the loan, defendants regularly claim a property interest in all the firm's cases until the loan was paid off. Defendants have even gone

as far as to claim the firms defaulted by not providing a list of all its cases or information on new cases, though the firm did not agree to use its interest in all of the firms cases or new cases as collateral for the loan. Additionally, Pravati engages in fraud and deceptive behavior when Pravati presents borrowers with loan agreements that do not contain a personal guaranty and which waives Pravati's rights to seek money damages in the case of default, but defendants regularly seek to enforce the agreement against borrowers personally and bring tort and other claims, in an effort to obtain control over property and assets to which Pravati is not entitled.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1964 and supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

6. Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because defendants are subject to personal jurisdiction in this judicial district and reside in this district.

## PARTIES

7. Plaintiff, Justin G. Randolph, is an attorney licensed in the State of Illinois.

8. Plaintiff, the Law Office of Justin G. Randolph, is a law firm incorporated in the State of Illinois, owned and managed by Justin G. Randolph.

9. Defendant, Pravati SPV II, LLC is a Delaware limited liability company with its principal business in Arizona. Pravati SPV II, LLC, is owned and managed, in whole or in part, by Defendant Alexander Chucri.

10. Defendant, Alexander Chucri ("Chucri"), is the CEO of Pravati SPV II, LLC.

11. In addition to Pravati SPV II, LLC, Defendant Chucri also owns and manages, in whole or in part, the following companies:

    a. Pravati Capital, LLC;

    b. Pravati Credit Fund III, GP LLC;

    c. Pravati Credit Fund III LP;

    d. Pravati Credit Fund III SPV, LLC;

    e. Pravati Investment Fund I, LLC;

    f. Pravati Investment Fund II, LLC

    g. Pravati Investment Fund IV GP, LLC;

    h. Pravati Investment Fund IV, LP;

    i. Pravati Investment Fund V GP, LLC;

    j. Pravati Investment Group, LLC;

    k. Pravati Investment Master Fund V, LP;

    l. Pravati Legal Finance III, LLC;

    m. Pravati Legal Networks, LLC;

    n. Pravati Management Group, LLC

    o. Pravati SPV-1, LLC;

    p. Pravati SPV IV, LLC;

    q. Pravati Fund V Offshore, LP;

    r. Arbitrage Capital, LLC.

12. Defendant Robert Binkley ("Binkley"), is the managing member of Defendant Binkley Properties, LLC.

13. Defendant Binkley Properties, LLC is a member of Defendant Property Capital LLC.

14. Defendant Arbitrage Capital Ventures, LLC is the manager/member of Pravati Capital, LLC.

15. Defendant Ian Abaie ("Abaie"), is Pravati Capital, LLC's "Legal Investment Analyst" and he also represents Pravati companies in Arizona state and federal court in furtherance of Defendants' fraudulent enterprise.

16. Defendant, Hoyt Neal ("Neal"), is listed as Pravati Capital's "Director of Legal Investments." Neal negotiated the loan Agreement with Defendant Randolph and negotiates loan agreements with other borrowers as well.

**FACTUAL ALLEGATIONS COMMON TO ALL RICO COUNTS**

17. Plaintiff Randolph is an attorney licensed in the State of Illinois and his primary area of practice is representing federal employees, generally law enforcement and/or veterans, with civil rights and civil service complaints.

18. In January 2017, after successfully litigating a matter for a federal employee, which included an award of attorney's fees, Plaintiff Randolph engaged a litigation loan company, Advanced Legal Capital, LLC, for an advance on that fee award due to delays in defendant's payment.

19. Plaintiff Randolph received the advance and repaid Advanced Legal Capital,

5

LLC with interest.

20. In October 2017, Plaintiff Randolph again contacted Advanced Legal Capital, LLC inquiring about litigation funding.

21. Plaintiff Randolph provided Advanced Legal Capital, LLC with a list of cases that were currently in litigation in state or federal court.

22. Advanced Legal Capital, LLC presenting Plaintiff's Randolph's funding request to various other litigation funding companies.

23. Advanced Legal Capital, LLC obtained an offer for litigation funding for the Law Office of Justin G. Randolph from Alliance Legal Funding. However, Plaintiff Randolph rejected the offer from Alliance Legal Funding as the company wanted a personal guaranty from Randolph as a condition of the loan.

24. Advanced Legal Capital, LLC then reached out to Neal at Pravati Capital, LLC.

25. To lend a veneer of legitimacy to its transactions, Pravati Capital LLC identifies Defendant Neal as "a former partner at a national law firm where he was primarily focused on commercial litigation, insurance defense (professional liability, product liability, construction defect) litigation, as well as employment and labor matters" who "served as national coverage counsel and liaison to Lloyd's of London and AIG" and "serves as a Judge Pro Tempore for the Arizona Superior Court."

26. What Pravati Capital did not reveal to potential borrowers such as Randolph is that Neal's employment with the firm of Wood, Smith, Henning & Berman, LLP was

6

terminated in or about March 16, 2016. Pravati Capital also did not reveal to potential borrowers such as Randolph is that in 2017, Neal was suspended from the practice of law for fraudulent billing practices and misrepresentations to clients, opposing counsel, and others. The disciplinary judge found presiding over Neal's suspension found, as aggravating factors, a pattern of misconduct, submission of false evidence, false statements, or other deceptive practices.  Additionally, Neal is not a Judge Pro Tempore for the Arizona Superior Court.

27. Ignorant of Defendant Neal's history, Plaintiff Randolph worked with Neal on a loan agreement with Pravati Capital LLC.

28. On November 6, 2017, Neal and Plaintiff Randolph spoke by phone regarding the loan agreement.

29. On November 6, 2017, Leti Monje, a Pravati Capital LLC, underwriter, emailed Plaintiff Randolph a "term sheet."

30. On November 28, 2017, based on additional communications between Plaintiff Randolph and Defendant Neal, Defendant Neal emailed Plaintiff Randolph a revised "term sheet."

31. On December 20, 2017, Defendant Neal emailed Plaintiff Randolph a funding agreement ("Agreement").

32. On December 21, 2017, Leti Monje, emailed Plaintiff Randolph an Agreement executed by Defendant Chucri as CEO of Pravati SPV II, LLC.

33. Neal presented Plaintiff Randolph with a non-recourse agreement for a

litigation loan in the amount of $100,000.00.

34. As requested by Plaintiff Randolph, the non-recourse Agreement Pravati drafted expressly provided that Randolph was not providing a personal guarantee for the loan. The Agreement also prohibited Pravati from seeking consequential, exemplary, equitable, loss of profits, punitive, tort or any other damages, under any circumstances.

35. The Agreement was signed by Plaintiff Randolph and Alexander Chucri as Pravati SPV II, LLC's CEO.

36. Unfortunately, between the time Plaintiff Randolph entered into the agreement and May 2019, the Firm entered a default status per the terms of the Agreement.

37. The Agreement expressly excluded a personal guaranty and instead contains a Limited Guarantee that states:

> "Guarantor's liability hereunder shall be and is specifically limited to payments of Recourse Obligations expressly required to be made in accordance with the Agreement (even if such payments are deemed to be damages) and, except to the extent specifically provided in the Agreement in no event shall Guarantor be subject hereunder to consequential, exemplary, equitable, loss of profits, punitive, tort or any other damages or, subject to this Guarantee, costs."

38. The Agreement states, "In the event of an uncured default by Firm, the Outstanding Amount will immediately convert from a Nonrecourse Advance to a Recourse Loan."

39. Per the Agreement, "Recourse Obligations" means any and all obligations of Law Firm under this Agreement (including all Nonrecourse Advances) as to which Law Firm is fully liable and Pravati has recourse to all assets of Law Firm beyond just

8

the Proceeds and the Collateral2, but if, and only if, there occurs any Default…"

40. On May 8, 2019, Pravati SPV II, LLC's in-house "senior litigation" counsel, Ian Abaie, an attorney licensed in Arizona, filed a claim for $179,914.32 with the American Arbitration Association for default and seeking to enforce the agreement personally against Plaintiff Randolph and his spouse Stephanie A. Sylverne. The claim also sought damages and relief expressly prohibited by the Agreement and amounts well in excess of the agreed upon interest.

41. On October 8, 2019, Defendant Abaie filed an amended claim for $248,651.12 seeking tort and other damages as well as relief prohibited by the Agreement it drafted and amounts well in excess of the agreed upon interest.

42. Pravati successfully pursued its unlawful damages claims through the arbitration process and obtained an award of money damages.  However, when Plaintiff Randolph challenged the arbitration award in the Arizona Superior Court, the tort claims were vacated.

43. However, Pravati was not done with their scheme, as the matter was remanded for another arbitration on Pravati SPV II, LLC's tort claims, at Defendant Abaie's request, even though those claims were expressly prohibited by the Agreement Defendant Neal negotiated with Plaintiff Randolph.

44. While the remanded matter was pending, Plaintiff Randolph discovered that Pravati SVP II, LLC is one of 18 related companies, 17 of which are incorporated in Delaware, one of which is incorporated in the Cayman Islands, all with their primary

9

place of business in one of two locations, 4400 N. Scottsdale Road, Suite 9277, Scottsdale, Arizona, 85251 or 7154 E. Stetson Drive, Suite 210, Scottsdale, AZ 85251, and all owned and managed in whole, or in part, by Defendant Chucri.

45. Pravati Capital, LLC is "managed" by Arbitrage Capital, LLC, also a Delaware company, owned or managed, in whole or in part, by Defendant Chucri.

46. Only seven of the Pravati companies are registered with the Securities and Exchange Commission and Pravati SPV II, LLC, is not one of them.

47. Plaintiff Randolph learned that, as of April 1, 2021, only one Pravati company, Pravati Capital LLC, was registered in Arizona.[1]

48. In February 2018, the California Department of Business Oversight ("CA DBO") served Pravati Capital, LLC, and Pravati Investment Fund 1, LLC, a desist and refrain order.

49. The CA DBO found that "Commencing in February 2015 to the present, Pravati Capital offered loans or lines of credit for law firms which are secured by the pending litigation of the law firm."

50. The CA DBO found that "Pravati Capital engaged in the business of a finance lender or broker in this state without first obtaining a license from the Commissioner,

---

[1] After Plaintiff Randolph filed a motion to terminate proceedings because Pravati SPV II, LLC was unregistered and prohibited from maintaining an action in Arizona courts, Chucri registered Pravati SPV II, LLC with the State of Arizona, but the company remains unlicensed in violation of Arizona law and Chucri still has not disclosed Pravati SPV, LLC to the SEC.

in violation of Financial Code 22100, subdivision (a)."

51. Defendant Pravati SPV II, LLC, and the other Pravati companies, are engaged in whole or in part in the business of "transmitting" money under A.R.S. § 6-1201(11).

52. No Pravati company, including Defendant Pravati SPV II, LLC, has the required license under A.R.S. § 6-1202 and are prohibited from engaging in the business of "money transmitting" under Arizona law. A.R.S. § 6-1202; A.R.S. § 6-1218.

53. Under Arizona criminal statutes, engaging in business without the requisite license is a crime. A.R.S. § 13-3706.

54. Pravati SVP II, LLC is not listed on Defendant Chucri's umbrella Form ADV filed with the Securities and Exchange Commission ("SEC").

55. Despite being unregistered and unlicensed in Arizona, as well as being hidden from the SEC, Pravati companies regularly engage in the business of loaning money to parties located across the United States all while collecting exorbitant fees and usurious interest rates.

56. Pravati never intends to comply with the Agreement it drafted, rather it is a scheme where, in the case of a purported default, Pravati seeks to and intends to hold borrowers personally liable, even where a personal guarantee is expressly prohibited by the Agreement, and also intends to seek damages expressly forbidden by the Agreement.

57. Despite being unregistered foreign companies, Pravati SVP II, LLC, and other Pravati companies, bring and maintain actions in Arizona State Courts in knowing violation of A.R.S. § 29-3902 (B).

58. Between 2011-2021, Pravati companies illegally entered into at least 10 funding agreements with borrowers.

59. The agreements and illegal transactions, and efforts to further them, were conducted through the mail and electronically.

60. Plaintiff Randolph also discovered that though unregistered companies have no authority to maintain legal actions in the courts of the State of Arizona, Pravati companies had done so repeatedly.

61. Plaintiff Randolph discovered that despite regularly agreeing that, "in no event shall Guarantor be subject hereunder to consequential, exemplary, equitable, loss of profits, punitive, tort or any other damages or, subject to this Guarantee, costs" Pravati companies, through in-house counsel Defendant Abaie, have continuously and repeatedly filed claims for torts and personal liability in arbitration and, after local arbitrators found for Pravati, enforced those claims against the borrower in direct contravention of Arizona law and the plain language of the Agreement.

62. Between 2016 and 2021, Defendants knowingly and intentionally brought claims and sought damages expressly prohibited by the Pravati company funding agreements at least 5 times.

63. Between 2016 and 2021, unregistered Pravati companies knowingly and

intentionally brought and maintained at least 13 prohibited claims in Arizona courts.

64. These acts were intentional and knowing and done in furtherance of the fraudulent enterprise.

65. Through intentional and knowing false or fraudulent pretenses, false representations, or false promises Defendants obtained access to money and property it would not otherwise have.

## COUNT I
## Violation of RICO, 18 U.S.C. § 1962(d)

66. At all relevant times, each Pravati company, including Pravati SPV II, LLC, was a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

67. At all relevant times, each RICO Defendant is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

68. At all times material to this Complaint, all Pravati companies, including Pravati SPV II, LLC were engaged in interstate and foreign commerce and in an industry that affects interstate and foreign commerce.

69. The RICO Defendants and their co-conspirators constitute an enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) referred to hereinafter as the "Enterprise." Each of the RICO Defendants participated in the operation or management of the Enterprise.

70. Defendants intentionally devised, engaged in, condoned and/or ratified the above-referenced open-ended and unlawful schemes to defraud and cheat Plaintiffs and other victims, transmit money illegally, and engage in usury.

71. Defendants have utilized the enterprise to engage in unlawful and intentional schemes to (i) defraud Plaintiffs via misrepresentations, fraudulent pretenses, false promises, and material omissions. and omissions (on which Plaintiffs and/or other third parties justifiably relied), and (ii) defraud Plaintiffs by cheating them via means of false or fraudulent pretenses to maintain and expand their commercial operations whereby Defendants and the enterprise obtained (and continue to obtain) money, funds, credits, assets, and/or other property, and, in the process, cheating and defrauding Plaintiffs and third parties out of finances and assets.

72. Defendants carried out these schemes to defraud, illegally transmit money, and engage in usury, through their Enterprise using the United States mail in violation of 18 U.S.C. § 1341.

73. Defendants also carried out these schemes to defraud, illegally transmit money, and engage in usury using interstate calls and electronic communications in violation of 18 U.S.C. § 1343.

74. Defendants' schemes to defraud, illegally transmit money, and engage in usury involved (and continue to involve) means of false or fraudulent pretenses and/or fraudulent and intentionally misleading representations.

75. Defendants' above-described multiple, repeated, and continuous acts of interstate mail and wire fraud, illegal money transmitting, and usury constitute a pattern of unlawful activity under 18 U.S.C. § 1961(1); (5).

76. Nothing in Defendants' actions demonstrates that their open-ended, unlawful,

and intentional schemes to defraud and cheat, defraud, illegally transmit money, and engage in usury, wrongful actions, deception, and concealment, and conspiracy of will ever terminate but for this Court's intervention.

77. Moreover, and independent of the duration of the schemes, Defendants' above-described unlawful and intentional schemes, wrongful actions, and deception, are a consistent, regular and dominant part of the manner in which they participate in, and conduct their day-today dealings with, Plaintiffs and third parties.

**COUNT II**
**Conspiracy to Violate RICO, Violation of 18 U.S.C. § 1962(d)**

78. Plaintiffs repeat and reallege the aforementioned paragraphs as if fully set forth in this Count.

79. The RICO Defendants have unlawfully, knowingly and willfully combined, conspired, confederated and agreed together and with others to violate 18 U.S.C. § 1962(c) as described above, in violation of 18 U.S.C. § 1962(d).

80. Upon information and belief, the RICO Defendants knew that they were engaged in a conspiracy to commit the predicate acts, and they knew that the predicate acts were part of such racketeering activity, and the participation and agreement of each of them was necessary to allow the commission of this pattern of racketeering activity. This conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

81. Upon information and belief, the RICO Defendants agreed to conduct or

participate, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

82. Each RICO Defendant knew about and agreed to facilitate the Enterprise's scheme to obtain property from Plaintiffs and others. It was part of the conspiracy that the RICO Defendants and their co-conspirators would commit a pattern of racketeering activity in the conduct of the affairs of the Enterprise, including the acts of racketeering set forth herein.

83. As a direct and proximate result of the RICO Defendants' conspiracy, the acts of racketeering activity of the Enterprise, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiffs have been injured in its business and property, including fees and costs to defend itself in objectively baseless, improperly motivated litigation, and damages awarded therefrom.

84. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover treble damages plus costs and attorneys' fees from the RICO Defendants.

**COUNT II**
**VIOLATION OF A.R.S. § 13-2314.04**

85. Plaintiff repeats and realleges the aforementioned paragraphs as if fully set forth in this Count.

86. Pursuant to A.R.S. § 13-2314.04 ("Arizona RICO"), a person who sustains reasonably foreseeable injury to his person, business, or property by a pattern of unlawful activity may file an action in superior court for the recovery of treble damages

and the costs of the suit, including reasonable attorney fees for trial and appellate representation.

87. A scheme or artifice to defraud to obtain a benefit by means of false or fraudulent, representations, promises or material omissions constitutes a pattern of unlawful activity under A.R.S. § 13-2310.

88. Knowingly engaging in or directly or indirectly providing financing for the business of making loans at a higher rate of interest or consideration than authorized by law constitutes a pattern of unlawful activity under A.R.S. § 12-2208.

89. Defendants have demonstrated a clear pattern of the aforementioned unlawful activity in furtherance of Defendants' financial gain.

90. Defendants falsely claimed it would not hold borrowers personally liable for loans and that it would not seek any damages beyond an interest in the firm's cases should there be default on the loan.

91. Defendants repeatedly sought interest or consideration at a higher rate than authorized by law.

92. Through Defendants acts, they have gained access to property and assets to which they had no rights.

93. Nothing in Defendants' actions demonstrates that their open-ended, unlawful, and intentional schemes to defraud and cheat, wrongful actions, deception, and concealment, and conspiracy of will ever terminate but for this Court's intervention.

94. Moreover, and independent of the duration of the schemes, Defendants' above-

described unlawful and intentional schemes, wrongful actions, and deception, are a consistent, regular and dominant part of the manner in which they participate in, and conduct their day-today dealings with, Plaintiffs and third parties, and clergy operating within the enterprise.

95. Pursuant to 13-2314.04, Plaintiffs are entitled to recover treble damages plus costs and attorneys' fees from the RICO Defendants.

**JURY TRIAL DEMAND**

96. Plaintiffs demand a trial by jury on all the triable issues within this pleading.

**PRAYER FOR RELIEF**

97. WHEREFORE, Plaintiff prays for the following relief against Defendants:

   a. For Plaintiff's general and special damages in an amount to be proven at trial by jury.

   b. For Plaintiffs' treble damages, as prescribed by A.R.S. § 13-2314 and 18 U.S.C. §1961-68.

   c. For Plaintiffs' incurred costs together with interest at the highest lawful rate on the total amount of all sums awarded from the date of judgment until paid.

   d. Economic damages in the form of out-of-pocket expenses, lost earnings, and other economic damages in an amount to be determine at trial of this action.

e. For punitive damages or exemplary damages to be set by a jury in an amount sufficient to punish Defendants for their outrageous conduct and to discourage others from engaging in similar conduct in the future.

f. Costs including reasonable attorneys' fees and costs, court costs, and other litigation expenses; and

g. For such other and further relief as this Court may deem just and proper

Respectfully Submitted,

/s/ Justin G. Randolph
Justin G. Randolph
Plaintiff, individually, and
on behalf of the Law Office
of Justin G. Randolph
justin@randolph-holloway.com
(312) 663-1560
*Pro Hac Vice*